**John S. TAYLOR, et al,
Plaintiffs-Appellants,**

v.

**Joan Taylor COE, et al,
Defendants-Respondents.**

No. 12945.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 9, 1984.

Sam R. Gardner, W. Dale Burke, Monett, Larry W. Meyer, Aurora, for plaintiffs-appellants.

Francis Oates, St. Louis, Emory Melton, Cassville, for defendants-respondents.

FLANIGAN, Presiding Judge.

This is an action to contest the will of Inez Catanya Hutchins, deceased, pursuant to the procedure set forth in § 473.083.[1] Plaintiffs would take by intestacy if the action succeeded. Defendants are beneficiaries named in the will. On motion of a defendant the circuit court dismissed the action for non-joinder of a necessary party. Plaintiffs appeal.

On February 4, 1980, Inez Hutchins, a resident of Barry County, Missouri, died in California while visiting her cousin, Ruth Putcamp ("Ruth"), who lived there. Ruth, who was named as a legatee in the will, left no lineal descendants.

On June 4, 1980, the will was admitted to probate in Barry County. The will contest was filed in the circuit court on December 2, 1980. On July 30, 1982, one of the defendants filed an unverified motion to dismiss which stated, among other things, that Ruth died "on or about February 4,

1980" and that a California executor had been appointed for her estate. The motion further stated that Ruth's executor "is a necessary party to this action who has not been named as a party defendant and who has not been served with process within 90 days from the date of the filing of the petition herein."

In response to the motion, Sam R. Gardner, one of the attorneys for plaintiffs, filed an affidavit in which he stated, "Inez Hutchins and [Ruth] were both apparently robbed and murdered on or about February 4, 1980. The bodies were found in the home of [Ruth] in Fresno, California."

█ The right to contest a will does not exist independently of statutory authority and it can be exercised only within the limits prescribed by § 473.083. *Blatt v. Haile*, 291 S.W.2d 85, 88 (Mo.1956). "Under § 473.083, the contestant must file his petition to set aside the will within six months of probate or rejection of the will or of the first publication of the notice of granting letters on the estate of the decedent, whichever is later. Further, under [now § 473.083, par. 6], the contestant must proceed diligently to complete service of process on each party defendant within 90 days after the petition is filed. Failure to file the suit and complete service of process on all necessary parties within the statutory time limits subjects the contestant to dismissal by the trial court unless good cause is shown explaining his inability to do so." *Shaffer v. Cochenour*, 569 S.W.2d 320 (Mo.App.1978).

█ A legatee is a necessary party to a will contest. *Watson v. Watson*, 562 S.W.2d 329, 331 (Mo. banc 1978); *Godsy v. Godsy*, 531 S.W.2d 547, 550 (Mo.App.1975). If Ruth were still living, the plaintiffs would have faced the procedural hurdles set forth in § 473.083 as summarized in *Shaffer*, supra.

The trial court, in its order of dismissal, found that the testatrix and [Ruth] were murdered on February 4, 1980, and "there

---

1. Unless otherwise indicated all references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

is no showing as to which of the two persons died first .... The estate of [Ruth] is not a party defendant in this case and more than 90 days have elapsed since the filing of the suit on December 2, 1980, and the estate of [Ruth] is an 'interested party' as required by § 473.083."

Section 473.083, par. 5, reads: "... Service of summons, petition, and subsequent pleadings thereto together with all subsequent proceedings in such will contest proceedings shall be governed by the Missouri Rules of Civil Procedure ...."

■ A motion does not prove itself and the burden is on the movant to prove its allegations. *Staab v. Thoreson*, 579 S.W.2d 414 (Mo.App.1979); *Williams v. Williams*, 497 S.W.2d 415 (Mo.App.1973); *Cobb Builders, Inc. v. Naidorf*, 472 S.W.2d 33 (Mo.App.1971). "Once a factual question of the court's jurisdiction is raised, the movant bears the burden of demonstrating that the court's exercise of jurisdiction is improper." *Parmer v. Bean*, 636 S.W.2d 691, 694 (Mo.App.1982). There must be evidentiary support for the order dismissing the petition and this court does not "apply a presumption of right action on the part of the trial court to sustain an order since it is being directly attacked in this action." *Cobb Builders, Inc.*, supra.

■ It is the duty of this court to dispose finally of the case unless justice otherwise requires. Rule 84.14. That duty, however, presupposes a record and evidence upon which this court can perform that function with some degree of confidence in the reasonableness, fairness, and accuracy of its conclusion. When such record and evidence are not presented, "reversal and remand necessarily follow." *Capoferri v. Day*, 523 S.W.2d 547, 558 (Mo.App.1975). To similar effect see *Markus v. Lind*, 617 S.W.2d 78 (Mo.App.1981); *In re Estate of Kranitz*, 610 S.W.2d 300 (Mo.App.1980); and *American Food Management v. Transamerica Ins.*, 608 S.W.2d 552 (Mo.App.1980).

■ In the absence of statute or a contrary provision in the will, a legacy lapses by the death of the legatee in the lifetime of the testator. 96 C.J.S. Wills § 1201, p. 1041. 80 Am.Jur.2d Wills § 1662, p. 718. The "anti-lapse statute," § 474.460, would not prevent the lapse of a devise or legacy to Ruth if, in fact, she predeceased the testatrix, because Ruth, although a relative, left no lineal descendants as required by the statute.

Missouri has the Uniform Simultaneous Death Law (§ 471.010– § 471.080). Section 471.010 reads:

"Where the title to property or the devolution thereof depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, as determined by a court of competent jurisdiction, the property of each person shall be disposed of as if he had survived, except as provided otherwise in this law."

Section 471.060 provides that the Uniform Simultaneous Death Law shall not apply to wills "where provision is made for distribution of property different from the provisions of this law, or where provision is made for a presumption as to survivorship which results in a distribution of property different from that here provided."

The unverified motion to dismiss, unsupported by any evidence offered by defendants, alleged that Ruth died "on or about" February 4, 1980. The only evidentiary material before the trial court was the affidavit of attorney Gardner which, reasonably construed, indicates that the deaths were simultaneous or that there was no sufficient evidence that the two women died "otherwise than simultaneously." The burden of proving a factual basis for their motion was on the defendants and that burden was not carried. The meager evidence which was before the court, pointing to a simultaneous death situation, militated against sustention of the motion.

The trial court had the power under Rule 55.28 to direct that factual issues concerning the priority of deaths be heard on oral testimony or depositions. The trial court also had the power to order that "the hear-

ing [on the motion] and the determination thereof be deferred until the trial." Rule 55.27(c). It is reasonable to assume that death certificates were procured with respect to the two murder victims, for California so requires. See California Health and Safety Code, §§ 10000 et seq. In *Lynde v. Western & Southern Life Insurance Co.*, 293 S.W.2d 147 (Mo.App.1956), it was held that a California death certificate was admissible as a properly authenticated record kept in a public office of a sister state under § 490.220 and that it was prima facie evidence of the facts stated in the certificate. See also *Wiggins v. Coy*, 462 S.W.2d 751, 752 (Mo.1971).

█ Under the Uniform Simultaneous Death Law the burden of proof is on the party whose claim is dependent upon survivorship. *Matter of Estate of Viviano*, 624 S.W.2d 130, 132[3] (Mo.App.1981). Referring to the language, "... there is no sufficient evidence that the persons have died other than simultaneously," contained in § 471.010, our supreme court has said: "This creates no presumption; but by its terms it is applicable where there is 'no sufficient evidence' of survivorship. Missouri has had no presumption relating to survivorship." *Schmitt v. Pierce*, 344 S.W.2d 120, 123 (Mo. banc 1961). In a case involving deaths occurring prior to the effective date of the Uniform Simultaneous Death Law, but decided after its enactment, our supreme court said: "Absent evidence from which survivorship may be reasonably inferred, devolution of property of necessity is determined on the theory the deaths occurred simultaneously, not because the fact of simultaneous deaths is presumed, but because he who asserts the contrary has failed to prove it." *Stewart v. Russell*, 227 S.W.2d 1011 (Mo.1950).

The defense motion was a "speaking motion." The author of it did not content himself with stating that Ruth was a legatee in the will and that she had not been joined and served as a party defendant. The motion stated that she was dead. Her death, in the absence of contrary language in the will, caused her legacy to lapse if she predeceased the testatrix. On the instant record defendants, to justify their position that Ruth was a legatee, had the burden of showing that Ruth survived the testatrix or that, under the will, the legacy did not lapse if Ruth predeceased, or died simultaneously with, the testatrix.

█ In a will contest the issue on trial is that of intestacy or testacy. § 472.083, par. 7. "The statute ... permits no other issue to be tried in said contest." *State v. Hensley*, 385 S.W.2d 820, 824[2] (Mo.App. 1964). "The validity, effect or construction of the provisions of the will cannot be determined in a will contest suit. *Weaver v. Allison*, 340 Mo. 815, 102 S.W.2d 884 (1937)." *State ex rel. O'Connell v. Crandall*, 562 S.W.2d 746, 749 (Mo.App.1978). Of course to determine who are the necessary parties to the action, the will itself must be read and, at least to that extent, "construed."

Defendants argue that certain language in the will shows that it was the intent of the testatrix that the legacy to Ruth would not lapse even if Ruth predeceased or died simultaneously with the testatrix. Articles 3, 4, 6 and 7 of the will made specific bequests to several relatives, including Ruth. Defendants rely on language in Article 15 which reads: "I make no provision whatsoever for any and all other surviving relatives." Defendants say: "This sentence can be read by implication to make inapplicable the Simultaneous Death Statute. § 471.010."

As this court understands defendants' argument, it is that the use of the word "surviving" in Article 15, coupled with its non-use in Article 4, which contained the legacy to Ruth, means that Ruth's legacy was not conditioned upon survival. This argument may ignore the word "other" in Article 15. The latter word, at least it might be argued, is subject to the construction that the testatrix was saying: "In the preceding articles I have listed certain relatives, including Ruth, and I make no provision for any and all other surviving relatives, that is those surviving relatives not previously listed."

It is unnecessary to decide whether either of the foregoing arguments is valid. Defendants' argument overlooks the fact that defendants quote only the typewritten portion of Article 15. The fact is that Article 15 also contains some handwritten language which, if valid, might affect the construction of Article 15. As to problems which may arise in determining the effect, if any, of the handwritten portion, see *Oliver v. Union National Bank of Springfield*, 504 S.W.2d 647 (Mo.App.1974). This court expresses no opinion on the validity of that handwritten portion nor indeed on the validity of the will itself or any other portion.

This court rejects defendants' contention that the typewritten language in Article 15 of the will, on the basis of the instant meager record, justified the trial court in dismissing the action for the nonjoinder of Ruth's personal representative.

At the time the will contest was instituted Ruth was dead and, of course, no longer capable of being sued. *In re Estate of Cromwell*, 522 S.W.2d 36, 41 (Mo.App. 1975); *Farrar v. Moore*, 416 S.W.2d 711, 712[1] (Mo.App.1967); 67A C.J.S. Parties § 41, p. 741. The need to join Ruth's personal representative as a party defendant arose only in the event her legacy had not lapsed, a factual matter on which, on the present record, defendants had the burden of proof and which they failed to carry.

This court does not foreclose, and in fact urges, additional inquiry into the factual issues of the sequence or simultaneity of the deaths of the two women. New evidence may justify reconsideration of the motion or the filing of a new motion.

The judgment is reversed and the cause remanded.

GREENE, C.J., and TITUS and CROW, JJ., concur.